UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
MCALLEN DIVISION

| | |
|---|---|
| NOELIA TANGUMA MARROQUIN § | |
| § | |
| Petitioner § | |
| VS. § | CIVIL ACTION NO. M-10-156 |
| § | |
| UNITED STATES OF AMERICA § | |

### ORDER DENYING PETITION FOR WRIT OF CORAM NOBIS

Now before the Court are Noelia Tanguma-Marroquin's Petition for Writ of Coram Nobis (Doc. No. 1), Government's (Sealed) Response (Doc. No. 9), Petitioner's Reply (Doc. No. 11), and Government's (Sealed) Surreply (Doc. No. 12). For the reasons explained below, the Petition is DENIED.

**I. Background**

Petitioner seeks the issuance of a writ of *coram nobis* to vacate her criminal conviction for one count of transporting an undocumented alien for private financial gain. She has served her sentence and is currently in the custody of United States Immigration and Customs Enforcement facing removal as a result of her criminal conviction.

Petitioner was adjudicated guilty on one count of transporting an alien after she entered a plea of "guilty" in accordance with her plea agreement with the Government. Petitioner states that her guilty plea was made not knowing that her criminal conviction carried the risk of deportation. She suggests that she would not have entered a guilty plea if she had known of such risk. Petitioner claims her attorney failed to explain this consequence of her plea and, thus, that she was deprived of her constitutional right to effective assistance of counsel.

Petitioner's basis for relief is the Supreme Court's recent decision in *Padilla v. Kentucky*, 130 S.Ct. 1473 (2010), in which the Supreme Court held "that counsel must inform her client whether his plea carries a risk of deportation." *Id.* at 1486.

The Government asks the Court to deny the Petition arguing that *Padilla* cannot be applied retroactively and, in the alternative, that Petitioner cannot show her attorney failed to explain the consequences of her plea nor that she was prejudiced by such alleged failure.

## II. Availability of the Writ of Coram Nobis

### a. Authority

"The writ of *coram nobis* is an extraordinary remedy available to a petitioner no longer in custody who seeks to vacate a criminal conviction in circumstances where the petitioner can demonstrate civil disabilities as a consequence of the conviction, and that the challenged error is of sufficient magnitude to justify the extraordinary relief." *Jimenez v. Trominski*, 91 F.3d 767, 768 (5th Cir. 1996) *quoted in United States v. Esogbue*, 357 F.3d 532, 534 (5th Cir. 2004). "This writ will issue only to correct errors resulting in a complete miscarriage of justice." *Id.* "The writ will issue only when no other remedy is available and when 'sound reasons exist[ ] for failure to seek appropriate earlier relief.'" *United States v. Dyer*, 136 F.3d 417, 422 (5th Cir. 1998) (quoting *United States v. Morgan*, 346 U.S. 502, 512 (1954)) *quoted in Esogbue*, 357 F.3d at 535.

Ineffective assistance of counsel can be grounds for *coram nobis* relief. *See United States v. Castro*, 26 F.3d 557, 559-60 (5th Cir. 1994).

### b. Discussion

It is undisputed that a writ of *coram nobis* is the only remedy available to Petitioner for her claim of ineffective assistance of counsel. This is supported by the fact that Petitioner could

not have, in good faith, appealed her conviction or made a collateral attack based on the claim of ineffective assistance of counsel prior to the Supreme Court's decision in *Padilla v. Kentucky* because the controlling precedent in the Court of Appeals for the Fifth Circuit dictated that the failure to advise a defendant of the risk of deportation was not ineffective assistance of counsel. *See United States v. Banda*, 1 F.3d 354 (5th Cir. 1993) *abrogated in part by Padilla v. Kentucky*, 130 S.Ct. 1473 (2010); *Santos-Sanchez v. United States*, 548 F.3d 327 (5th Cir. 2008) *abrogated by Padilla v. Kentucky*, 130 S.Ct. 1473 (2010). Therefore, the Court concludes that it is appropriate to consider the petition for writ of *coram nobis* for the alleged ineffective assistance of counsel.

However, the Court must first determine whether Petitioner may avail herself of the holding in *Padilla v. Kentucky* before considering her claim.[1]

### III. Retroactive Application of *Padilla v. Kentucky*

#### a. Authority

In *Teague v. Lane*, 489 U.S. 288 (1989), and subsequent cases, the Supreme Court laid out the framework for determining when a rule announced in one of its decisions should be applied retroactively in criminal cases that are already final on direct review.[2] Under *Teague* "an old rule applies both on direct and collateral review, but a new rule is generally applicable only to cases that are still on direct review." *Whorton v. Bockting*, 549 U.S. 406, 416 (2007) (quoting *Griffith v. Kentucky*, 479 U.S. 314 (1987). A new rule may "appl[y] retroactively in a collateral proceeding only if (1) the rule is substantive or (2) the rule is a 'watershed rul[e] of criminal procedure' implicating the fundamental fairness and accuracy of the criminal proceeding." *Id.*

---

[1] Petitioner "must demonstrate as a threshold matter that the court-made rule of which [s]he seeks the benefit is not 'new.'" *O'Dell v. Netherland*, 521 U.S. 151, 156 (1997).
[2] It is undisputed that Petitioner's case is already final on direct review.

(quoting *Saffle v. Parks*, 494 U.S. 484, 495 (1990) (quoting in turn *Teague v. Lane*, 489 U.S. 288, 311 (1989) (plurality opinion) (internal quotations omitted)).

Therefore, the Court's initial inquiry into the retroactive application of a rule is to determine whether the Supreme Court decision that the petitioner relies upon announced a new rule. The Supreme Court acknowledges that it is difficult to determine when a case announces a new rule, but it has consistently stated that "[a] holding constitutes a 'new rule' within the meaning of *Teague* if it 'breaks new ground,' 'imposes a new obligation on the States or the Federal Government,' or was not '*dictated* by precedent existing at the time the defendant's conviction became final.'" *Graham v. Collins*, 506 U.S. 461, 467 (1993) (quoting *Teague*, 489 U.S. at 301 (emphasis in original)). If the Court concludes that a Supreme Court has announced an old rule, it applies retroactively; however, if the rule is new, the Court must then consider whether one of the two exceptions applies to make it retroactive. *Whorton*, 549 U.S. at 416.

### b. Discussion

Few courts have had an opportunity to consider *Padilla v. Kentucky*'s application to collateral challenges of cases that became final before the Supreme Court's decision was announced. Some have found that the rule announced in *Padilla* is new and not within the narrow *Teague* exceptions for it to apply retroactively.[3] But a majority of courts have found that *Padilla* is simply the application of an old rule, concluding that *Padilla*'s holding applies retroactively.[4] No Circuit Court of Appeals has considered the issue and there are no indications

---

[3] *See Gacko v. United States*, No. 09-CV-4938, 2010 WL 2076020 (E.D.N.Y. May 20, 2010); *United States v. Gilbert*, No. 2:03-cr-00349-WJM-1, 2010 WL 4134286 (D.N.J. Oct. 19, 2010); *People v. Kabre*, 905 N.Y.S.2d 887 (N.Y. Crim. Ct. July 22, 2010).

[4] *See United States v. Obonaga*, No. 07-CR-402, 2010 WL 2629748 (E.D.N.Y. June 24, 2010); *United States v. Hubenig*, No. 6:03-mj-040, 2010 WL 2650625 (E.D.Cal. July 1, 2010); *United States v. Chaidez*, No. 03 CR 636-6, 2010 WL 3184150 (N.D.Ill. Aug. 11, 2010); *People v. Bennett*, 903 N.Y.S.2d 696 (N.Y. Crim. Ct. May 26, 2010); *People v. Garcia*, 907 N.Y.S.2d 398 (N.Y. Sup. Aug. 26, 2010); *People v. Ramirez*, No. 2004NY012357, 2010 WL 3769208 (N.Y. Crim. Ct. Sept. 17, 2010); *People v. Ortega*, No. 2008NY012378, 2010 WL 3786254 (N.Y. Crim. Ct. Sept. 28, 2010).

that another district court within the Fifth Circuit has weighed in either. As is explained below, this Court joins the majority of other courts that have considered the issue and concludes that *Padilla* does not announce a new rule, that it is an extension of the rule in *Strickland v. Washington*, 466 U.S. 668 (1984)—requiring effective assistance of counsel—, and that its holding should apply retroactively.

### i. *Padilla v. Kentucky*

The Supreme Court's opinion in *Padilla v. Kentucky* begins by presenting a comprehensive analysis of the landscape of federal immigration law in the last century, illustrating immigration law's expansion into the ambit of criminal law to the point where "[o]ur law has enmeshed criminal convictions and the penalty of deportation." 130 S.Ct. at 1481. The Court denotes that the "changes to our immigration law have dramatically raised the stakes of a noncitizen's criminal conviction," *id.* at 1480, making it "'most difficult' to divorce the penalty from the conviction in the deportation context," *id.* at 1481 (quoting *United States v. Russell*, 686 F.2d 35, 38 (D.C. Cir. 1982)). The Court found that "[t]hese changes confirm [its] view that, as a matter of federal law, deportation is an integral part—indeed, sometimes the most important part—of the penalty that may be imposed on noncitizen defendants who plead guilty to specified crimes." *Id.* at 1480. Based on this finding, the Supreme Court concludes that advice regarding deportation is not removed from the constitutional right to effective assistance of counsel. *Id.* at 1482.

The Supreme Court's conclusion is opposite the holding of several state courts and every federal circuit court to have addressed the issue.[5] In arriving at such conclusion, the Court

---

[5] *See United States v. Del Rosario*, 902 F.2d 55 (D.C. Cir. 1990); *United States v. Gonzalez*, 202 F.3d 20 (1st Cir. 2000); *United States v. Santelises*, 509 F.2d 703 (2d Cir. 1975); *United States v. Romero-Vilca*, 850 F.2d 177 (3d Cir. 1998); *United States v. Yearwood*, 863 F.2d 6 (4th Cir. 1988); *Santos-Sanchez v. United States*, 548 F.3d 327 (5th Cir. 2008); *El-Nobami v. United States*, 287 F.3d 417 (6th Cir. 2002); *Santos v. Kolb*, 880 F.2d 941 (7th Cir.

indentifies the lower courts' error in the "ill-suited" direct-versus-collateral distinction they made to find that "failure of defense counsel to advise the defendant of possible deportation consequences is not cognizable as a claim for ineffective assistance of counsel" and, thus, that *Strickland* did not apply. *Id.* at 1482; *Kentucky v. Padilla*, 253 S.W.3d 482, 483 (Ky. 2008) *quoted in and rev'd by Padilla*, 130 S.Ct. at 1481. According to the Court, "[the Supreme Court] ha[s] never applied a distinction between direct and collateral consequences to define the scope of constitutionally 'reasonable professional assistance' required under *Strickland*." *Padilla*, 130 S.Ct. at 1481 (citation omitted). The Court concludes that the distinction between direct and collateral consequences is unnecessary because the close connection of deportation to the criminal process made it "uniquely difficult to classify as either a direct or collateral consequence." *Id.* at 1482, 1481.

Therefore, having held "that advice regarding deportation is not categorically removed from the ambit of the Sixth Amendment right to counsel," *id.* at 1482, the Supreme Court concludes that *Strickland* applies to advice regarding deportation and that competent counsel has an affirmative duty to inform a client of the risk of deportation arising from a guilty plea. *Id.* at 1482, 1486. The Court reaches this conclusion after finding, under a *Strickland* analysis, that "[t]he weight of prevailing professional norms supports the view that counsel must advise her client regarding the risk of deportation." *id.* at 1482. The Court points out that it too has long recognized that "[p]reserving the client's right to remain in the United States may be more important to the client than any potential jail sentence." 3 Bender Criminal Defense Techniques

---

1989); *United States v. Fry*, 322 F.3d 1198 (9th Cir. 2003); *Broomes v. Ashcroft*, 358 F.3d 1251 (10th Cir. 2004); *United States v. Campbell*, 778 F.2d 764 (11th Cir. 1985); *Oyekoya v. State*, 558 So. 2d 990 (Ala. Crim. App. 1989); *State v. Rosas*, 904 P.2d 1245 (Ariz. Ct. App. 1995); *State v. Montalban*, 810 So. 2d 1106 (La. 2002); *Commonwealth v. Frometa*, 555 A.2d 92 (Pa. 1989).

§§ 60A.01, 60A.02[2] (1999) *quoted in INS v. St. Cyr*, 533 U.S. 289, 322 (2001) *in turn quoted in Padilla*, 130 S.Ct. at 1483.[6]

Justice Alito's concurring opinion—which the Chief Justice joined—similarly concludes that:

> an alien defendant's Sixth Amendment right to counsel is satisfied if defense counsel advises the client that a conviction may have immigration consequences, that immigration law is a specialized field, that the attorney is not an immigration lawyer, and that the client should consult an immigration specialist if the client wants advice on that subject.

*Padilla*, 130 S.Ct. at 1494 (Alito, J., concurring). Justice Alito would require competent counsel to simply inform an alien defendant that a conviction may have immigration consequences and would stop short of the majority's requirement that counsel provide advice on the subject if he is not an immigration specialist. *See id.* Justice Alito's disagreement with the majority lies in what he perceives as the burdensome requirement "to provide expert advice on matters that lie outside [counsel's] area of training and experience." *Id.* at 1487-88. However, and despite his description of such an affirmative duty as a "dramatic departure from precedent," *id.* at 1488, Justice Alito acknowledges that "any competent criminal defense attorney should appreciate the extraordinary importance that the risk of removal might have in the client's determination whether to enter a guilty plea." *Id.* at 1494. The difference of opinion between the Justices in the majority and Justice Alito and the Chief Justice is a matter of degree—the extent of competent counsel's advice to a noncitizen defendant regarding immigration consequences of a guilty plea. *See id.* Ultimately, Justice Alito and the Chief Justice concur with the five-Justice majority in finding that counsel's advice on the immigration consequences of a conviction is subject to the

---

[6] It is important to note that the Supreme Court also cites to multiple state statutes that require trial courts to advise defendants of possible immigration consequences. *See Padilla*, 130 S.Ct. at 1486 n.15.

*Strickland* analysis of effective assistance of counsel. *See generally id.* at 1487-94 (majority opinion and Alito, J., concurring).

### ii. The Extension of an Old Rule

In highlighting the importance of deportation in the criminal process regardless of whether it is considered a direct or collateral consequence of a conviction, the Supreme Court rejected the lower courts' approach to claims of ineffective assistance of counsel when convicted noncitizens alleged they were unaware of the risk of deportation. *See supra* Part III.b.i. In so doing, the Supreme Court did not break new ground, it simply pointed out the error in the lower courts that prevented them from considering ineffective assistance of counsel claims under *Strickland*. *See id.* The Supreme Court found that the lower courts' direct-versus-collateral distinction impermissibly removed advice regarding deportation from "the ambit of the Sixth Amendment right to counsel." *Padilla*, 130 S.Ct. at 1482. The Supreme Court then held, by considering "[t]he weight of prevailing professional norms" and applying *Strickland* to the set of facts, that the failure to advise a noncitizen defendant of the immigration consequences of a criminal conviction is *per se* constitutionally deficient representation. *Id.* at 1482, 1483.

The Court finds that the Supreme Court's holding in *Padilla* does not "break[ ] new ground," does not "impose[ ] a new obligation on the States or the Federal Government," and was "*dictated* by precedent existing at the time the defendant's conviction became final"—i.e., *Strickland*. *Teague v. Lane*, 489 U.S. 288, 301 (1989) (plurality opinion) (emphasis in original) *quoted in Graham v. Collins*, 506 U.S. 461, 467 (1993). Therefore, this Court concludes that *Padilla* does not announce a new rule and that *Padilla* is an extension of the rule in *Strickland*.[7]

---

[7] Justice Scalia in his dissenting opinion—which Justice Thomas joined—interprets the majority's holding as an extension of the Sixth Amendment requirement of effective assistance of counsel. *Padilla*, 130 S.Ct. at 1495 (Scalia, J., dissenting) ("I reject the significant further extension that the Court, and to a lesser extent the concurrence, would create.").

The Government argues that *Strickland*'s application in *Padilla* "yields a result so novel that it forges a new rule, one not dictated by precedent." *Wright v. West*, 505 U.S. 277, 309 (1992) (Kennedy, J., concurring) *quoted in* (Doc. No. 9 at 15). In support of its argument, the Government cites to several cases in which the Supreme Court considered new applications of *Strickland* and tries to distinguish them from the Supreme Court's application of *Strickland* in *Padilla*. *See* (Doc. No. 9 at 16) (citations omitted). However, the cases cited by the Government are not distinguishable and, instead, support the Court's finding that *Padilla* applied *Strickland* to a new set of facts without establishing a new rule because, like in the cases cited, the Supreme Court in *Padilla* merely cited to professional standards and expectations and identified competent counsel's duty in accordance thereof. *See Padilla*, 130 S.Ct. at 1482-84; *cf. Wiggins v. Smith*, 539 U.S. 510 (2003) (considering "whether the investigation supporting counsel's decision not to introduce mitigating evidence . . . *was itself reasonable*"); *Rompilla v. Beard*, 545 U.S. 374 (2005) (considering if "even when a capital defendant's family members and the defendant himself have suggested that no mitigating evidence is available, his lawyer is bound to make reasonable efforts to obtain and review material [readily available to the prosecution]"); *Roe v. Flores-Ortega*, 528 U.S. 470 (2000) (considering "counsel's failure to file a notice of appeal without respondent's consent" and his duty to "consult with the defendant regarding the possibility of appeal"). As Justice Kennedy has indicated, "[w]here the beginning point is a rule of this general application, a rule designed for the specific purposes of evaluating a myriad of factual contents, it will be the infrequent case that yields a result so novel that it forges a new rule, not one dictated by precedent." *Wright*, 505 U.S. 308-09 (Kennedy, J., concurring). The Government has failed to cite, and the Court has not found, an "infrequent case" that could show how *Padilla* can be construed as a new rule not dictated by *Strickland*. The Supreme Court has

noted that "the *Strickland* test provides sufficient guidance for resolving virtually all ineffective-assistance-of-counsel claims," and this Court finds *Strickland* has provided such guidance in *Padilla*. *Williams v. Taylor*, 529 U.S. 362, 391 (2000).

The Government also argues that the Supreme Court's "overruling prior precedent, and imposing new obligations are conclusive evidence that *Padilla* announced a new rule." (Doc. No. 12 at 5). In support thereof, the Government notes that before the Supreme Court considered the issue presented in *Padilla*, the lower courts were nearly unanimous in holding that the Sixth Amendment did not require counsel to advise a client about collateral consequences. *See* (Doc. No. 9 at 13). The Government also cites the "sharp disagreement" among the Justices of the Supreme Court as "[r]einforcing the novelty of the *Padilla* rule." *Id.* at 14. The Court finds these arguments unconvincing.

First, "[e]ven though [the Supreme Court] ha[s] characterized the new rule inquiry as whether 'reasonable jurists' could disagree as to whether a result is dictated by precedent, the standard for determining when a case establishes a new rule is 'objective,' and the mere existence of conflicting authority does not necessarily mean a rule is new." *Wright v. West*, 505 U.S. 277, 304 (1992) (O'Connor, J., concurring) (citations omitted) *quoted in Williams*, 529 U.S. at 410. *Padilla* overruled virtually every lower courts' conclusions regarding advice of immigration consequences, but it did so based on the lower courts' failure to even consider the underlying ineffective assistance of counsel claims under *Strickland*. *See supra* Part III.b.i. *Padilla* abrogated the lower courts' decisions because of their "ill-suited" distinction between direct and collateral consequences that summarily rejected the ineffective assistance of counsel claims, and then continued with the analysis the lower courts should have made under *Strickland*. *See id.* Had the lower courts not dwelled in the direct-versus-collateral distinction, they would

have necessarily applied *Strickland* to the ineffective assistance of counsel claims that were before them and would have considered the same professional legal standards the Supreme Court examined in reaching its conclusion; instead, the lower courts dismissed the claims without the analysis dictated by *Strickland*. *See id.* It is dispositive for the Court that this was the basis on which the Supreme Court abrogated the lower courts' rulings; therefore, the fact that *Padilla* overruled prior precedent is not instructive on the issue of its retroactive application.

Furthermore, the Court disagrees with the Government's characterization of the difference of opinion between the majority in *Padilla* and the concurring Justices. Seven Justices agreed that "any competent criminal defense attorney should appreciate the extraordinary importance that the risk of removal might have in the client's determination whether to enter a guilty plea." *Padilla*, 130 S.Ct. at 1494 (Alito, J., concurring); *cf. Padilla*, 130 S.Ct. at 1477-87. And the only point of contention among the seven Justices is the extent of the duty to give correct advice regarding immigration consequences. *Id.* at 1494 (Alito, J., concurring). This, the Court finds, cannot be considered a "sharp disagreement." Although Justice Alito goes on to identify the problems with the majority's approach, *see id.* at 1490-92, there is no "sharp disagreement," on the contrary, Justice Alito, the Chief Justice and the majority in *Padilla* ultimately agree that counsel's advice on the risk of deportation should be considered under *Strickland*. *See generally id.* at 1477-94 (majority opinion and Alito, J., concurring).

Finally, it is important to note the Supreme Court's "floodgates" discussion in *Padilla* in which the Court addressed the concern that its holding would "flood" courts with new litigation. 130 S.Ct. at 1484-85. "If the Court intended *Padilla* to be a new rule which would apply prospectively, the entire 'floodgates' discussion would have been unnecessary." *United States v.*

*Hubenig*, No. 6:03-mj-040, 2010 WL 2650625, at *7 (E.D.Cal. July 1, 2010) *quoted in United States v. Chaidez*, No. 03 CR 636-6, 2010 WL 3184150, at *5 (N.D.Ill. Aug. 11, 2010).

In rejecting the lower courts' approach to the ineffective assistance of counsel claims that allege misinformation on the risk of deportation, or lack thereof, the Court did not announce a new rule. *Padilla* simply found counsel has an obligation to inform a noncitizen defendant of the immigration consequences of his guilty plea through a *Strickland* analysis based on "[t]he weight of prevailing professional norms" that "[f]or at least 15 years . . . have generally imposed an obligation on counsel to provide advice on the deportation consequences of a client's plea." *Padilla*, 130 S.Ct. at 1482, 1485. In *Padilla*, the Supreme Court has not announced a new law, it has applied existing law to a new set of facts; therefore, this Court concludes *Padilla* applies retroactively.

### IV. Ineffective Assistance of Counsel

#### a. Authority

In evaluating an ineffective assistance of counsel claim, the Court must "first determine whether counsel's representation 'fell below an objective standard of reasonableness.'" *Padilla*, 130 S.Ct. at 1482 (quoting *Strickland*, 446 U.S. at 688). "Then [the Court] ask[s] whether 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'" *Id.* (quoting *Strickland*, 446 U.S. at 694). "The first prong—constitutional deficiency—is necessarily linked to the practice and expectation of the legal community: 'The proper measure of attorney performance remains simply reasonableness under prevailing professional norms.'" *Id.* (quoting *Strickland*, 446 U.S. at 688).

The failure of counsel to provide noncitizen defendants correct advice on the immigration consequences of their guilty pleas is *per se* a constitutional deficiency. *Id.* at 1486. However, relief depends on whether prejudice resulted from such deficiency. *Id.* at 1487.

### b. Discussion

Petitioner alleges her attorney "never told [her] that [her] plea of guilty to the offense of transporting an illegal alien for profit would lead to [her] deportation and permanent removal from the United States." (Doc. No. 1, Ex. 1 at 2). Petitioner claims she would have "gone before a jury" instead of entering a guilty plea had she known of the risk of deportation. *Id.* However, the record does not support her alleged lack of knowledge.

When Petitioner was before this Court for sentencing in the underlying criminal case, her attorney argued for a lesser sentence by explaining to the Court, in the presence of Petitioner, that:

> [N]ow she's going to loser her papers. She's a resident alien. She's going to lose everything. That's the biggest loss.

(Doc. No. 9, Ex. 4 at 7). It is clear from Petitioner's attorney's statements that he was aware of the immigration consequences of her conviction, and they support the "presum[ption] that counsel satisfied [his] obligation to render competent advice at the time [his] client[ ] considered pleading guilty." *Padilla*, 130 S.Ct. at 1485 (citing *Strickland*, 446 U.S. at 689). Petitioner has presented nothing more than unsupported allegations that do not rebut the presumption of competent advice.

However, even if the Court assumed *arguendo* that Petitioner's attorney failed to advise her of the risk of deportation—thus satisfying the first prong of the *Strickland* analysis according to *Padilla*—, Petitioner fails to show prejudice. Petitioner claims she would have chosen to take her case before a jury instead of entering a guilty plea if she knew of the risk of deportation,

(Doc. No. 1, Ex. 1 at 2), but the record of her rearraignment shows she was aware of such a risk before she entered her guilty plea. During the plea colloquy this Court informed her:

> If I accept your guilt plea you will be adjudged guilty of this felony offense, and this will have consequences to you. . . . [I]f you're not a citizen of this country, then this would require that your status here be revoked, and you would be deported back to your home country.

(Doc. No. 9, Ex. 3 at 85). The Court did not simply apprise her of the risk of deportation; the Court informed her she would indeed be deported. She then acknowledged she understood this consequence of her plea. *Id.* at 86. Even if Petitioner's attorney failed to render competent advice, she was not prejudiced because the Court made sure she understood the immigration consequence of her plea before accepting it.

Petitioner has taken the position that the Court's warning during the plea colloquy is inadequate because the risk of deportation was not discussed fully. *See* (Doc. No. 11 at 15-16). According to Petitioner, she needed to understand the risk of "life time banishment" pursuant to 8 U.S.C. § 1182(a)(6)(E). *Id.* But given that 8 U.S.C. § 1182(d)(11) gives the Government discretion to lift Petitioner's exclusion "for humanitarian purposes, to assure family unity, or when it is otherwise in the public interest," and, thus, the law is not "succinct and straightforward . . ., a criminal defense attorney [or the Court] *need do no more* than advise a noncitizen [ ] that pending criminal charges may carry a risk of adverse immigration consequences." *Padilla*, 130 S.Ct. at 1483 (footnote omitted) (emphasis added). Therefore, the Court finds that an unequivocal admonition by the Court regarding the risk of deportation was sufficient for Petitioner to decide whether or not to enter a guilty plea.

The Court concludes that Petitioner was aware of the risk of deportation, presumably from counsel's advice, and that, even if counsel had not provided competent advice, Petitioner

has failed to show prejudice by the alleged deficient conduct of counsel because the Court made certain she understood the risk of deportation before accepting her guilty plea. Therefore, Petitioner's claim of ineffective assistance of counsel fails under *Strickland* and the writ of *coram nobis* should not be issued.

### V. Conclusion

For the reasons explained above, the Petition for Writ of Coram Nobis is DENIED.

SO ORDERED this 4th day of February, 2011, at McAllen, Texas.

_____
Randy Crane
United States District Judge